# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| DOUGLAS C. JONES | CIVIL ACTION NO. 09-0086 |
| LA. DOC #126403 | |
| VS. | SECTION P |
| | JUDGE DOHERTY |
| LYNN COOPER, WARDEN | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Douglas C. Jones, filed the instant petition for writ of *habeas corpus* on January 20, 2009. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is incarcerated at the Lafayette Parish Corrections Center (LPCC) and complains that the Louisiana Parole Board's revocation of his parole status in September 2006 was unconstitutional. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE.**

### Background

Sometime prior to August 29, 2005 petitioner was released on parole. He apparently resided in New Orleans until August 29, 2005 when he and others evacuated the city in the wake and aftermath of Hurricane Katrina. Petitioner evacuated to Houston, Texas.

On some unspecified date a warrant issued for petitioner's arrest charging that he had absconded parole supervision. Petitioner learned of the warrant and surrendered himself to the Texas Attorney General's Office on July 13, 2006. Louisiana authorities were notified and on July 17, 2006 he was transported to the Elayn Hunt Corrections Center, St. Gabriel, Louisiana.

Petitioner concedes that he was provided with a Bill of Particulars charging him with absconding parole supervision. [rec. doc. 1-4, pp. 7-9]

On September 7, 2006 the Parole Board convened a revocation hearing, and, at its conclusion revoked petitioner's parole ordering him to serve 4 years at hard labor. [see rec. doc. 1-4, pp. 7-9]

On or about April 4, 2007 petitioner, who was then incarcerated at the Avoyelles Corrections Center (ACC), Cottonport, Louisiana,  filed a *pro se* "Application for Writ of Habeas Corpus Petition for Judicial Review" in Louisiana's Nineteenth Judicial District Court, East Baton Rouge, Parish. The petition was assigned Docket Number 554209-F.[1] [See rec .doc. 6-2, Exhibit I, p. 2; see also rec. doc. 1-4, pp. 10-40] In conjunction with his suit petitioner filed a "Motion for Production of Parole Revocation Hearing Transcript/Subpoena Duces Tecum Request for Related Documents." [rec. doc. 6-2, Exhibit II, pp. 4-6] On July 12 and July 25, 2007 petitioner corresponded with the Clerk of the Nineteenth Judicial District Court concerning the status of his case. [rec. doc. 6-2, Exhibits III and IV] On August 2, 2007, a Deputy Clerk responded, "There is no disposition of your case. The only pleadings that have been filed are the petition, memorandum, motion with order and motion *in forma pauperis*. Nothing has been done in this case since the filing of these pleadings on 4/11/2007." [rec. Doc. 6-2, Exhibit III, p. 8]

---

[1] Petitioner argued three claims for relief, paraphrased as follows: (1) The revocation of parole on a charge of "absconding" (Condition #2) violated due process, equal protection, and fundamental fairness since the evidence adduced at the parole revocation hearing addressed only an alleged violation of Condition #3 – failure to report; (2) the parole revocation warrant lacked probable cause, contained misstatements of fact and resulted in an improperly convened and instituted revocation proceeding, and, the unreasonable delay in the execution of the warrant frustrated petitioner's ability to present evidence in mitigation at the revocation hearing; and, (3) the revocation of parole in this case was an abuse of discretion and an abuse of authority by the parole board. [see rec. doc. 1-4, p. 13]

On August 15, 2007 petitioner filed an Application for Writs of Mandamus/Supervisory and/or Remedial Writs in the First Circuit Court of Appeals. Therein petitioner alleged that four months had elapsed since he filed a petition for writ of *habeas corpus* in the Nineteenth Judicial District Court and the Court had made no disposition. Petitioner argued that this delay violated Art. 1, §22 of Louisiana's Constitution. [rec. doc. 6-2, Exhibit V, pp. 10-12] This pleading was received and filed by the First Circuit on August 23, 2007 and assigned Docket Number 2007-CW-1642. [rec. doc. 6-2, Exhibit VI, p. 13] On September 28, 2007 the First Circuit Court of Appeals rejected petitioner's writ application because petitioner failed to pay the filing fee or properly apply for *in forma pauperis* status. Petitioner's writ application was then returned to him and he was instructed how to cure the deficiency. *Douglas C. Jones v. Avoyelles Correctional Center, Warden, et al.*, No. 2007-CW-1642 (La. App. 1 Cir. 9/28/2007) at rec. doc. 6-2, Exhibit VII, pp. 14-15.

On November 8, 2007 petitioner filed another pleading in the First Circuit Court of Appeals; this action was assigned Docket Number 2007-CW-2273. [rec. doc. 6-2, Exhibit VIII, p. 16] On December 26, 2007 the writ application was rejected by the First Circuit as follows, "The second writ application received on your behalf contained pauper documents that indicated you had funds in your prison account. This Court will not accept any further application unless accompanied by a payment of $7.50 as required by La. R.S.15:1186." [*Douglas C. Jones v. Lynn Cooper, Warden, et al.*, No. 2007-CW-2273 (La. App. 1 Cir. 12/26/2007), at rec. doc. 6-2, Exhibit IX, pp. 17-18]

On January 7, 2008 petitioner corresponded with the Clerk of the First Circuit Court of Appeals; on January 10, 2008, the Clerk advised petitioner that his writ application, No. 2007-

CW 2273 filed on November 5, 2007 was rejected on December 26, 2007 as noted above. A copy of the writ order was provided. [rec. doc. 6-2, Exhibit X, pp. 19-20]

On February 5, 2008 petitioner filed another writ application with the First Circuit Court of Appeals and submitted a check in the amount of $7.50. [rec. doc. 6-2, Exhibit XI, pp. 22-23] This writ application, entitled *Douglas C. Jones vs. Timothy E. Kelly, Judge*, was received and filed by the Clerk of the First Circuit Court of Appeals on February 14, 2008 and assigned Docket Number 2008-CW-0284. [rec. doc. 6-2, Exhibit XIII, p. 24][2] On April 16, 2008 the First Circuit denied writs. [rec. doc. 6-2, Exhibit XIV, p. 25][3]

On July 9, 2008 petitioner filed pleadings in the Louisiana Supreme Court seeking review of the First Circuit's judgment under Docket Number 2008-CW-0284. The writ application was assigned Docket Number 2008-CP-1523 by the Supreme Court. [rec. doc. 6-2, Exhibit XVIII, p. 30]

While his writ application was pending in the Louisiana Supreme Court, petitioner filed the instant petition for *habeas corpus* on January 20, 2009. The petition presents the following grounds for relief: (1) Denial of Due Process, Equal Protection and Fundamental Fairness at the Parole Revocation; (2) Fourth Amendment violations relative to issuance of an arrest warrant; (3) Equal Protection and Due Process violations based on failure to comply with *Stare Decisis* /abuse of power and authority; and, (4) Unconstitutional statute – La. R.S.15:574.9(C) which prohibits preliminary pre-revocation hearings for parolees charged with absconding supervision. With regard to the factual support for each of these claims, petitioner directs the court to the

[2] Petitioner did not provide a copy of the writ application.

[3] Petitioner did not provide a copy of the writ judgment.

Memorandum in Support of *Habeas* Application filed in the Nineteenth Judicial District Court. [rec. doc. 1, ¶5] The memorandum relied upon by petitioner to advance his federal constitutional claims presents argument on these four claims for relief as follows: (1) "The finding of guilt by the Louisiana Parole Board as it relates to the allegation of absconding under the peculiar facts and circumstances of this case constitutes violations of due process, equal protection, fundamental fairness and plain common sense." [rec. doc. 1-4, pp. 14-21]; (2) "Issuance of a warrant for this petitioner's arrest as a result of Hurricane Katrina with general information and omissions of fact and relevance demonstrates total disregard for truth, fails to establish probable cause and improperly instituted parole revocation proceedings which violated 4th Amendment principals. Additionally, deliberate and unreasonable delay in the execution of this warrant rendered the same stale and frustrated this Relator's ability to proffer mitigating evidence at his parole revocation hearing, in violation of the Due Process Clause." [rec. doc. 1-4, pp. 21-24]; (3) Non-compliance, failure to reason and observe the applicable Doctrine of *Stare Decisis* by the Louisiana Parole Board as it relates to modern penology and parole revocation proceedings in this case effectuated an abuse of powers and discretion which further denied this parolee his Constitutional rights to equal protection and due process of law." [rec. doc. 1-4, pp. 24-28]; and, (4) La. R.S.15:574.9(C) and the application thereof to the facts and circumstances of this case renders this particular statute unconstitutionally broad, sweeping, over-reaching and constitutionally defective, denying this petitioner his Constitutional rights to fundamental fairness, equal protection, and the due process of law." [rec. doc. 1-4, pp. 29-38]

Thereafter, on April 13, 2009, while this matter was pending initial review, the Louisiana Supreme Court issued the following order, "Relator represents that the district court has failed to

act timely on a writ of *habeas corpus* filed on or about April 11, 2007. If relator's representation is correct, the district court is ordered to consider and act on the application. If relator's representation is incorrect, the district court is ordered to accept, file and act upon the pleading which is herewith transferred to the district court. The district court is ordered to provide this Court with a copy of its judgment." [*Douglas C. Jones v. Lynn Cooper, Warden, et al.*, 2008-1523 (La. 4/13/2009), 5 So.3d 150, at rec. doc. 6 -2, Exhibit XIX, pp. 31-32.]

On August 4, 2009 petitioner provided a copy of the Nineteenth Judicial District Court Commissioner's Screening Report in the matter entitled *Douglas Jones vs. Parole Board and Lynn Cooper*, Docket Number 554,209. The Screening Report which was signed on April 17, 2009 recommended dismissal of petitioner's suit contesting parole revocation as untimely. In recommending dismissal, the Commissioner made the following findings of fact and conclusions of law:

> In this case, the Petitioner filed this suit on April 11, 2007, contesting his parole revocation that occurred on September 7, 2006, more than 8 months before suit was filed. The Petitioner contests the Parole Board's factual finding that he absconded supervision following Hurricane Katrina. This claim does not state a cause of action for *habeas* relief because the Petitioner's own attachments show, and he acknowledges that his present incarceration is due to his parole having been revoked by the Parole Board after a hearing was held in 2006. Thus, his only remedy in challenging the decision of the Parole Board is by appeal to this Court in accordance with R.S.15:574.11. This Court's appellate jurisdiction is contingent upon a timely appeal/challenge of the parole decision. That has not occurred in this case.
>
> \*       \*       \*
>
> This appeal challenges a parole revocation, which the Petitioner's attachments show took place in September 2006. He waited until April 2007 to file this appeal (as a writ of habeas corpus), which is untimely, based on the facts alleged and R.S.15:574.11. Therefore, there is no alternative for this Court but to dismiss this appeal for lack of subject matter jurisdiction. [rec. doc. 10, pp. 2-3(emphasis supplied)]

On May 12, 2009 the District Judge adopted the recommendation of the Commissioner and ordered dismissal of the lawsuit as "perempted under R.S.15:574.11D." [rec. doc. 10, p. 4]

## Law and Analysis

### 1. Venue and Jurisdiction

A collateral attack on a Louisiana parole revocation may be filed in either the judicial district where the petitioner was convicted, or the district where he is incarcerated. See *Carmona v. Andrews*, 357 F.3d 535 (5th Cir. 2004). Further, venue and jurisdiction attach at the time of filing. See *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.1998) ("[J]urisdictional facts must be judged as of the time the complaint is filed[.]"); see also *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir.1985) ( "It is well established that jurisdiction attaches on the initial filing for *habeas corpus* relief[.]"). As noted above, petitioner is incarcerated at the Lafayette Parish Corrections Center. That facility is located within this judicial district and division. Therefore, this Court has jurisdiction over petitioner's *habeas* petition and venue is appropriate in this Division.

### 2. Limitations

This petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the court must apply the provisions of AEDPA, including the timeliness provisions. *Villegas v. Johnson,* 184 F.3d 467, 468 (5th Cir. 8/9/1999); *In Re Smith,* 142 F.3d 832, 834, citing *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Title 28 U.S.C. §2244(d) was amended by AEDPA to provide a one-year statute of limitations for the filing of applications for writ of *habeas corpus* by persons such as petitioner, who are in custody pursuant to the judgment of a State court.

Since petitioner does not challenge his underlying conviction the limitations period for any attack on the revocation of his parole began on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." See 28 U.S.C. §2244(d)(1)(D). See *Williams v. Johnson*, 253 F.3d 706 (5th Cir. 2001) (unpublished) citing *Alexander v. Johnson*, 163 F.3d 906, 907 at fn. 1 (5th Cir. 1998); see also *Heiser v. Johnson,* 263 F.3d 162, 2001 WL 803542 (5th Cir.2001) (Table, No. 00-14008) (unpublished), in which the Fifth Circuit considered the interplay of §2244(d) to parole revocation proceedings and provided the following analysis:

> With the implementation of the AEDPA on April 24, 1996, a state prisoner has one year to petition a federal district court for a writ of *habeas corpus*. 28 U.S.C. § 2244 states in pertinent part:
>
> (d) (1) A 1-year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

To decide when the statute of limitation on Heiser's claim began to accrue, we must determine under which of those provisions his claim falls.

Neither side contends that the filing of Heiser's claim was delayed by any State action or that any new constitutional right has been defined by the Supreme Court, so our review is narrowed to subsections (d)(1)(A) and(d)(1)(D). Subsection (d)(1)(A) pertains to direct review of 'the judgment.' Specifically, what is being reviewed herein is the 'judgment' of the parole panel to revoke Heiser's mandatory supervision and return him to state custody, with the resultant loss of all accrued good time credits... The term 'judgment' contained in (d)(1)(A), however, does not stand alone. It derives directly from the previous sentence in (d)(1) stating 'a person in custody pursuant to the judgment of a State court.' Clearly the parole panel is not a court; thus, its decision cannot be deemed a judgment under the terms of (d)(1)(A).

We are left, then, with subsection (d)(1)(D) and when Heiser was, or with due diligence should have been, aware of the predicate facts of his *habeas* claims. Johnson contends that Heiser was aware of the potential for revocation of his mandatory supervision and resultant loss of good conduct credits well before his revocation hearing, but in any event the very latest he could or should have been aware of those facts was when the parole board revoked his mandatory supervision...

<u>Heiser knew of the facts surrounding the revocation of his mandatory supervision and the forfeiture of his accrued good conduct credits at least by the date his supervision was revoked on February 11, 1998. Accordingly, we conclude that under § 2244(d)(1)(D) the statute of limitations on Heiser's claim began running on that date.</u>

*Heiser*, 2001 WL 803542, at. *2 (emphasis supplied, footnotes omitted)

Petitioner discovered the factual predicate of his claim on September 7, 2006,  the date of the parole revocation hearing. [see rec. doc. 1-4, pp. 7-9] Therefore, the one-year period of limitations expired September 7, 2007.  Clearly, more than one-year elapsed between the date of petitioner's parole revocation hearing and the date he filed his federal petition for writ of *habeas corpus*.

The evidence supplied by petitioner further suggest that he is not entitled to rely on statutory tolling pursuant to 28 U.S.C. §2244(d)(2). The statute provides, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." As noted above, on April 11, 2007, petitioner filed a suit in the Nineteenth Judicial District Court attacking the revocation of his probation and claiming that the revocation was in violation of his right to due process. However, as shown above, that suit was ultimately dismissed as untimely by the Nineteenth Judicial District Court. [rec. doc. 10, pp. 2-4] A state post-conviction petition or collateral attack which has been rejected by the state court as untimely under the state's statute of limitations, is not considered "properly filed," within the meaning of the statutory tolling provision of the AEDPA and thus cannot toll the limitations period. *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). Therefore, petitioner is not entitled to statutory tolling.

### 4. Equitable Tolling

The Fifth Circuit has held that the AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled. See *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (quotation marks omitted). The pleadings and exhibits submitted by the petitioner suggest no reason which would support equitable tolling of the statute of limitations. The petitioner was not actively misled by the state of Louisiana; nor was he prevented in some extraordinary way from asserting his rights

by timely filing his *habeas* claims. Further, "ignorance of the law, even for an incarcerated pro se petitioner [like petitioner], generally does not excuse prompt filing." *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.1999); see also *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir.2002).

The petition is time-barred by the provisions of 28 U.S.C. § 2244(d)(1)(A). Equitable tolling does not apply.

### 5. Exhaustion of State Court Remedies

Title 28 U.S.C. § 2254 states, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State...

This statute codifies the jurisprudential rule of exhaustion which requires that state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. *Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). The doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Federal and state courts are equally obliged to guard and protect rights secured by the Constitution, therefore, it would be inappropriate for a federal district court to upset a state court conviction without first giving the state court the opportunity to correct the alleged constitutional violation.

To have exhausted state remedies, a federal *habeas* petitioner must have fairly presented the substance of his federal constitutional claims to the state courts. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998).

The petitioner must "fairly present" his federal constitutional claim to the highest state court. *Skelton v. Whitley*, 950 F.2d 1037, 1041 (5th Cir.), *cert. denied sub nom. Skelton v. Smith*, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). In Louisiana, the highest state court is the Louisiana Supreme Court.

Petitioner presented his claims to the Nineteenth Judicial District Court as a petition for *habeas corpus*, and not as an appeal as required by Louisiana law. [See La. R.S.15:574.11] Further, petitioner's request for judicial review of the revocation of his parole was, as shown above, filed beyond the statutory peremptive period.  In other words, petitioner failed to "fairly present" his federal claims to the Louisiana Supreme Court in a procedurally correct manner and therefore his claims remain unexhausted. *Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993); *Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986)

Petitioner argues that he should be exempted from the exhaustion requirement because "[f]or two years [he] has done everything humanly and legally possible to comply with the La. Rules of Court and jurisprudence in his attempts to get the state courts to address the claims/issues in the Habeas Corpus Application ... to no avail." Petitioner maintains that his "writ has been shuffled back and forth between the La. Parole Board, the 19th JDC, the La. First Circuit Court of Appeals and the La. Supreme Court in a seemingly never ending parade of official confusion and road blocks..."  However, it appears that petitioner (and not the Louisiana Courts)  is at fault since he failed to comply with Louisiana law. Compare *See v. State of Louisiana*, 2008-1819 (La.App. 1 Cir. 3/27/09), 2009 WL 838275 (unreported)(citing *Madison v.*

*Ward*, 2000-2842 (La. App. 1 Cir. 7/3/2002), 825 So.2d 1245.) [4]  In other words, state court

remedies, with regard to petitioner's *habeas* claims were not properly exhausted.

### 6. Technical Exhaustion and Procedural Default

It appears, however, that petitioner's claims while unexhausted, are "technically"

exhausted since it is unlikely that petitioner could return to the Louisiana courts to re-litigate the

claim. As noted above, the 90-day  peremptive period for seeking judicial review of his parole

revocation has long ago expired and any attempt to raise the claim at this point in time would be

futile.

Thus, petitioner's "technically" exhausted claims must now be considered procedurally

defaulted. The procedural default doctrine bars federal *habeas corpus* review if the state courts

would <u>now</u> refuse to address a *habeas* petitioner's unexhausted federal claims because litigation

of those claims would be barred by state procedural rules.

Federal *habeas* review of this "technically" exhausted but now procedurally defaulted

claim is barred "...unless the prisoner can demonstrate cause for the default and actual prejudice

as result of the alleged violation of federal law, or demonstrate that failure to consider the claims

will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-

51, 111 S.Ct. 2546,  115 L.Ed.2d 640 (1991).

---

[4] See also the Commissioner's Screening Report, which, citing *Madison v. Ward, supra*, stated,  "The Petitioner contests the Parole Board's factual finding that he absconded supervision following Hurricane Katrina. This claim does not state a cause of action for *habeas* relief because the Petitioner's own attachments show, and he acknowledges that his present incarceration is due to his parole having been revoked by the Parole Board after a hearing was held in 2006. Thus, his only remedy in challenging the decision of the Parole Board is by appeal to this Court in accordance with R.S.15:574... All revocation complaints must be heard by this Court in its appellate capacity, and R.S.15:574.11 sets a 90-day peremptory time limit on all revocation appeals..."

### A. Cause and prejudice

In *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court explained that "cause" in the context of a procedural default refers to an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645 (internal citations omitted).

Clearly, the cause of the default herein identified was petitioner's failure to properly advance his federal constitutional claim in a systematic manner to the Louisiana Supreme Court. This failure was clearly not "... an impediment <u>external</u> to the defense..." Thus, petitioner cannot show "cause" for his default. Further, if a *habeas* petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).

### B. Miscarriage of Justice

Since petitioner has failed to show "cause and prejudice" for his default, federal review of the "technically exhausted" claims may therefore be had only if necessary to avoid a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Glover v. Cain*, 128 F.3d 900, 904 (5th Cir. 1997). To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime, or, in petitioner's case, that he did not violate the conditions of his parole. *Corwin v. Johnson,* 150 F.3d 467, 473 (5 Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a factual matter that the Parole Board's revocation of parole was based on a factual error. Thus, petitioner has not shown that he will suffer a fundamental miscarriage of justice from this court's failure to consider his current *habeas corpus* claim. Accordingly, petitioner cannot avoid procedural default of these claims on the grounds of actual innocence.[5]

## 7. The Merits of The Claims

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides for prompt review and examination of  *habeas* petitions by the court and further states, "If it plainly appears from the face of the petition and any exhibits annexed to it that the

---

[5] Of course, petitioner may again object to this Report and Recommendation. In the event that he does object, he is encouraged to provide argument and evidence of "cause and prejudice" and "miscarriage of justice." Additionally, he is also encouraged to submit argument and evidence to establish that he either exhausted his federal claims, or that there were no state court remedies available, or that he still has the right to avail himself of state court remedies.

petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), the Advisory Committee Notes following Rule 4 state, "...under § 2243 it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."

Thus, even if the petition is deemed timely; or, even if petitioner should be excused from the exhaustion requirement and, even if his claims could be address on the merits, his claims are still subject to being dismissed pursuant to Rule 4 for the following reasons.

The memorandum relied upon by petitioner to advance his federal constitutional claims presents argument on four claims for relief as follows: (1) "The finding of guilt by the Louisiana Parole Board as it relates to the allegation of absconding under the peculiar facts and circumstances of this case constitutes violations of due process, equal protection, fundamental fairness and plain common sense." [rec. doc. 1-4, pp. 14-21]; (2) "Issuance of a warrant for this petitioner's arrest as a result of Hurricane Katrina with general information and omissions of fact and relevance demonstrates total disregard for truth, fails to establish probable cause and improperly instituted parole revocation proceedings which violated 4th Amendment principals. Additionally, deliberate and unreasonable delay in the execution of this warrant rendered the same stale and frustrated this Relator's ability to proffer mitigating evidence at his parole revocation hearing, in violation of the Due Process Clause." [rec. doc. 1-4, pp. 21-24]; (3) Non-compliance, failure to reason and observe the applicable Doctrine of *Stare Decisis* by the Louisiana Parole Board as it relates to modern penology and parole revocation proceedings in this case effectuated an abuse of powers and discretion which further denied this parolee his

Constitutional rights to equal protection and due process of law." [rec. doc. 1-4, pp. 24-28]; and,

(4) La. R.S.15:574.9(C) and the application thereof to the facts and circumstances of this case

renders this particular statute unconstitutionally broad, sweeping, over-reaching and

constitutionally defective, denying this petitioner his Constitutional rights to fundamental

fairness, equal protection, and the due process of law." [rec. doc. 1-4, pp. 29-38]

*a. Due Process*

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the

Supreme Court outlined the minimal due process requirements for parole revocation as:

(1) written notice of the claimed violations; (2) disclosure of the evidence against Petitioner;

(3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the

right to confront and cross-examine adverse witnesses (unless the hearing officer specifically

finds good cause for not allowing confrontation); (5) a "neutral and detached" hearing body such

as a traditional parole board; and (6) a written statement by the fact finders as to the evidence

relied on and the reasons for the revocation. *Id.* at 489.

The evidence submitted by petitioner establishes that he was provided written notice of

the claimed violations on August 7, 2006, approximately one month prior to the revocation

hearing. [rec. doc. 1-4, p. 7; see also p. 12, "In accord with Due Process principles, petitioner was

provided with written notice by way of a Bill of Particulars, accusing him of absconding ..."] He

was afforded the opportunity to be present at the hearing and to be heard in person and present

evidence; and he was given the opportunity to cross-examine his parole officer before the Parole

Board which provided a written statement concerning revocation. [*Id.*, pp. 7-9]

Nevertheless, petitioner complains that he was not afforded a pre-revocation hearing between the date of his arrest on July 13, 2006 and the date he was delivered to Hunt Corrections Center four days later.

The purpose of a pre-revocation or preliminary hearing is solely to determine whether there is probable cause to believe that the parolee has violated any of the conditions of his parole, and, if so to proceed to a final revocation hearing. *Morrissey*, 408 U.S. at 485. Under Louisiana law, parolees are considered to have absconded supervision when they absent themselves from their approved place of residence without permission. Further, under Louisiana law, absconders are not entitled to a pre-revocation hearing since extradition or waiver of extradition is considered as probable cause for the revocation of parole with respect to absconders who are ultimately apprehended out of state. See La. R.S.15:574.9(C) which provides, "A parolee ... who has absented himself from the supervising jurisdiction, or from his place of residence, without proof of permission for such absence, shall be deemed a fugitive from justice and shall be returned to the physical custody of the Department ... for a revocation hearing by the Board of Parole, without necessity of a prerevocation or probable cause hearing, at or near the place of the arrest or violation." See also 22 La. ADC. Pt. XI, §1101(C), and 22 La. ADC. Pt XI, §1105(B). Petitioner, by his own admission was apprehended outside the State of Louisiana and thereafter he was, by his own admission, extradited to Louisiana. As such, he was not entitled to a pre-revocation or preliminary hearing since probable cause was not at issue.

### b. Absconding vs. Failure to Report

The gravamen of petitioner's complaint is that, while he was charged with absconding, he was ultimately revoked based upon his failure to report to his parole officer. Of course, this

claim is refuted by the evidence submitted which clearly establishes that parole was revoked

because petitioner absconded supervision. [rec. doc. 1-4, p. 9]

The statutory conditions of parole in Louisiana are set forth in La. R.S.15:574.4 and

include –

> (b) Remain within the limits fixed by the certificate of parole. If he has good cause to leave these limits, he will obtain written permission from the parole officer and the approval of the division of probation and parole before doing so.

> (c) Between the first and fifth days of each month, until his final release, and also on the final day of his parole, make a full and truthful written report upon the form provided for that purpose and that he will take or mail his report to his parole officer. He will report to the probation and parole officer when directed to do so.

>         \*       \*       \*

> (i) Live and work at the places stated in his parole plan and not change residence or employment until after he has permission to do so from his parole officer.

La. R.S.15:574.4(H)(4)(b), (c), and (i).

Petitioner evacuated New Orleans during Hurricane Katrina and, by his own admission,

he moved to Houston, Texas. However, he does not allege that he requested or obtained

permission from his parole officer to leave Louisiana as required by condition (b) and (i), and, he

nowhere alleges that upon his arrival in Houston, or at any time thereafter, he contacted his

parole officer as required by condition (c).[6]

Further, as shown above, under Louisiana law, "A parolee may be considered to have

absconded supervision if he absents himself from his approved place of residence without

---

[6] Petitioner alleged that "every time he tried calling the St. Charles Ave. Office (Parole) after the storm, either the line was always busy, or he was placed on hold forever, or, he never had an opportunity to speak with a live human being." [rec. doc. 1-4, p. 27]

permission from the Division of Probation and Parole." See 22 La. ADC. Pt. XI, §1101(C)(1).

Petitioner's parole was revoked for absconding supervision and, indeed, the facts as alleged by petitioner – that he took up residence in Texas without obtaining either advance or after-the-fact permission of his parole officer and he apparently failed to thereafter  notify authorities of his whereabouts – provide sufficient evidence to support the revocation of his parole.  As noted by petitioner the Parole Board "... went into great detail referencing an alleged violation of sub-paragraph (c), commonly referred to as Condition Number 3, and demanding answers to this petitioner's 'failure to report' as opposed [to] his reasons for the counterfeit absconding allegation, for which he sincerely believed required no detailed explanation as a result of the mandatory evacuation orders issued..." [rec. doc. 1-4, p. 15] Petitioner implies that by virtue of the mandatory evacuation of New Orleans, he was justified in both leaving the State without permission and thereafter failing to report his whereabouts. Such a claim is clearly untenable.   Indeed, petitioner does not explain why the mandatory evacuation of New Orleans would have in turn mandated his travels to Houston, Texas instead of a location in Louisiana; and, he does not explain why he failed to advise his parole officer of his whereabouts once he relocated to Houston.[7]  Clearly, it appears that the Parole Board, in inquiring about petitioner's

---

[7] Elsewhere, he implies that he was not required to report his whereabouts to his  parole officer because "... this parolee's where-a-bouts were always known to the Board by way of any requested information from F.E.M.A., based primarily on his various applications for assistance from this Federal Agency ..." [rec. doc. 1-4, p. 24] On some unspecified date petitioner received a telephone call from a parole officer who attempted to verify petitioner's identity and whereabouts.  Nevertheless, it was petitioner's obligation to report and not the obligation of the parole officer to track him down through his applications for aid from a federal agency.[See also, rec. doc. 1-4, at pp. 26-27]

alleged failure to report, was making a logical inquiry as to why petitioner failed to apprise his parole officer of his whereabouts for over a year following his evacuation from New Orleans.[8]

Based on the evidence thus far submitted by the petitioner, it plainly appears that he was afforded all the process that was due to him in conjunction with the revocation of parole. It further appears that there was sufficient evidence to warrant revocation.[9] His petition should be dismissed because he has failed to establish that he is in custody in violation of the Constitution and laws of the United States.

### c. Equal Protection

Petitioner claims that his equal protection rights were violated because parolees who admitted violations were placed in Half-way Houses or Drug Treatment Programs, whereas parolees who denied their violations were revoked and returned to prison.

---

[8] Petitioner claims, "... had he been provided with written notice that he'd be made to answer to an allegation of failing to report ... as opposed to absconding ... then he would have certainly been prepared to offer reasonable explanations and present a countless number and wide variety of documentary evidence and mitigation synonymous with such an allegation, all of which would have definitely supported and suggested the fact that such a violation did not occur, or alternatively that under these peculiar circumstances revocation was not warranted." [rec. doc. 1-4, p. 15] Nevertheless, petitioner has not alleged or otherwise provided any of this evidence in his federal petition. In fact, petitioner alleged only that "health care" problems and concerns prevented him from reporting to his parole officer; or, that he attempted to contact his parole office by telephone, but his efforts were unsuccessful. He does not explain how he was prevented from otherwise corresponding or contacting his officer. [rec. doc. 1-4, p. 16]

[9] The record, including petitioner's memorandum, provides sufficient evidence to establish that petitioner violated at least one condition of his parole. A revocation proceeding is not a criminal trial. A criminal prosecution is governed by the reasonable doubt standard, while the state's burden of proof in a parole revocation hearing is considerably less. The two are therefore different. See *Villareal v. United States Parole Commission*, 985 F.2d 835, 839 (5 th Cir.1993). All that is required is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as required by the terms and conditions of his release. See *Mack v. McCune*, 551 F.2d 251, 254 (10 th Cir.1977). In this case, petitioner, by his own admission, left the State and remained in Texas without contacting his parole officer for an extended period of time. Revocation was warranted. See *United States v.. McCormick*, 54 F.3d 214, 219 n. 3 (5 th Cir.), cert. denied, 516 U.S. 902 (1995)(when reviewing decision to revoke supervised release based on several alleged violations, record need only support a violation of a single condition of release in order to be upheld by appellate court); *Frick v. Quinlan*, 631 F.2d 37, 39 (5 th Cir.1980)(same).

In order for petitioner to establish an equal protection claim, he must prove that the Parole Board "created two or more classifications of similarly situated prisoners that were treated differently, ... and (2) that the classification had no rational relation to any legitimate governmental objective." *Stefanoff v. Hays County, Tex.*, 154 F .3d 523, 527 (5th Cir.1998) (citations omitted). He must demonstrate that Board acted with a "discriminatory purpose." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir.1995). "Discriminatory purpose ... implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Id.* (quoting *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir.1992)). "The existence of a discoverable group or classification <u>antedating</u> the challenged state action is a *sine qua non* for proving purposeful discrimination; it cannot tenably be maintained that the state selected a particular course of action to harm an 'identifiable group' when that body did not exist until after the state acted." *Id.* at 307. Parolees who either admitted or denied violations of the conditions of parole are clearly not a "discoverable group or class." *Id.* at 307 n. 10.  See also *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41, 105 S.Ct. 3249, 3254-55, 87 L.Ed.2d 313 (1985) (Providing a listing suspect classes).

"Disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.1997).  Petitioner's allegations, accepted as true, simply do not support a violation of equal protection.

**d. Errors in Parole Violation Warrant and Timeliness of Execution**

Petitioner claims that the parole violation warrant that was issued in his case was misleading because it did not contain any information with regard to the mandatory evacuation of New Orleans. Petitioner's claim is difficult to understand. Clearly, as noted above, petitioner was not charged with absconding supervision because he obeyed the mandatory evacuation orders; he was charged with absconding because he ultimately moved to Houston, Texas without obtaining the permission of his parole officer or even attempting to obtain the permission of the parole officer after the fact.

Further, his claim that the warrant was stale is likewise without merit. As noted above, he implies that he was not required to report his whereabouts to his parole officer because "... this parolee's where-a-bouts were always known to the Board by way of any requested information from F.E.M.A., based primarily on his various applications for assistance from this Federal Agency ..." [rec. doc. 1-4, p. 24] However, the fact remains, that petitioner clearly did not report his whereabouts to his parole officer in a timely fashion. His suggestion that the parole officer was obliged to find him in a timely fashion is without merit.

**e. Constitutionality of La. R.S.15:574.9(C)**

Petitioner maintains that R.S.15:574.9(C) is unconstitutional insofar as it deprived him of a pre-revocation hearing at the place he was arrested. As shown above, the statute comports with the minimum due process requirements outlined in *Morrissey v. Brewer, supra,* since the purpose of the pre-revocation hearing is to determine probable cause and petitioner's presence outside the State, without permission, provides all the probable cause needed. Petitioner has not demonstrated that the statue was unconstitutional either as written, or as applied.

#### 4. Conclusion and Recommendation

The petition is time-barred by the provisions of 28 U.S.C. §2244(d). In addition, petitioner failed to properly exhaust available state court remedies prior to filing his federal habeas corpus petition. State court remedies are probably now unavailable and petitioner's federal habeas corpus claims should be considered procedurally defaulted. Petitioner has not shown cause for the default or prejudice resulting therefrom, nor has he shown that the court's failure to address his federal claims would result in a miscarriage of justice. Finally, petitioner's claims are manifestly without merit. Petitioner was afforded all the process he was due under *Morrissey v. Brewer*. There was sufficient evidence to warrant the revocation of his parole in light of the fact that he absconded supervision. While his original evacuation to Houston in the wake of Hurricane Katrina may have been  beyond his control, it does not appear that petitioner made any legitimate attempts to contact the parole officer and advise her of his whereabouts.

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**  because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d); and, since petitioner failed to exhaust available state court remedies and his claims,  although  now technically exhausted, it must be dismissed as procedurally defaulted;

**IT IS FURTHER RECOMMENDED** that the petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases since petitioner has not established that he is in custody in violation of the Constitution and laws of the United States.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on August 18, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)